## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## AT COVINGTON

| | |
|---|---|
| **SUZANNE BRATT**<br>WHITTAKER LAW, LLC<br>2055 Reading Road, Suite 260<br>Cincinnati, Ohio 45202,<br><br>    **Plaintiff,**<br><br>v.<br><br>**THE CITY OF COVINGTON,**<br>**KENTUCKY**<br>c/o City Solicitor Frank Schultz<br>20 West Pike Street<br>Covington, Kentucky 41011<br><br>**and**<br><br>**ROSS WOODWARD, individually**<br>**and in his official capacity as a**<br>**police officer acting under color**<br>**of state law,**<br>1 Police Memorial Drive<br>Covington, Kentucky 41014. | **Case No.:** _____<br><br>**Judge:** _____ |

### <u>COMPLAINT AND JURY DEMAND</u>

**COMES NOW,** Plaintiff **SUZANNE BRATT**, by and through counsel, and for her Complaint and Jury Demand against Defendants the **CITY OF COVINGTON, KENTUCKY**, and **POLICE OFFICER ROSS WOODWARD**, individually and in his capacity as a public official acting under color of state law, alleges as follows:

### NATURE OF THIS CASE

1.      Plaintiff Suzanne Bratt initiates this civil action against Defendant, Ross Woodward, individually and in his capacity as a police officer acting under color of state law, under 42 U.S.C. §1983 ("Section 1983"), for using unlawful and excessive force against her on July 17, 2025, when affecting her arrest on the John A. Roebling Suspension Bridge connecting Cincinnati, Ohio and Covington, Kentucky for failing to disperse a peaceful vigil, under KRS §525.160 (a non-violent Class-B misdemeanor).

2.      The acts and omissions of Officer Woodward alleged in this Complaint amount to violations of Plaintiff's clearly established right arising under the Fourth Amendment to the United States Constitution, and otherwise deprived her of her privileges, immunities, and rights arising under the United States Constitution, and secured by federal law.  Plaintiff also proceeds against Woodward personally for the torts of IIED and NIED arising under the law of the Commonwealth.

3.      Finally, Plaintiff proceeds against the City of Covington, Kentucky, in its own right under Section 1983 and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) and its progeny for approving, adopting, ratifying, and/or endorsing the unlawful and unconstitutional conduct of Officer Woodward pursuant to its policies, procedures, and customs, which were the driving force behind the acts and omissions of the Officer which underpin this Complaint, and for its failure to adequately train and supervise him.

4.      By this civil action, Plaintiff seeks relief in the form of compensatory damages, equitable relief, injunctive relief, statutory relief, damages for emotional

distress and psychological injuries, punitive damages, reimbursement of her attorney's fees and costs, and all other relief to which she's entitled in law and equity, in excess of the jurisdictional threshold of this Court.

## PARTIES, JURISDICTION, AND VENUE

5.      Plaintiff incorporates the allegations in the preceding paragraphs of this Complaint as if fully rewritten.

6.      At all times relevant to this Complaint, Plaintiff Suzanne Bratt has resided in Hamilton County.

7.      At all times relevant to this Complaint, the City of Covington, Kentucky ("the City") has been a home-rule class municipality located in Kenton County, Kentucky.

8.      At all times relevant to this Complaint, Defendant Ross Woodward has been a resident of Kenton County, Kentucky, and a police officer employed by the City of Covington.

9.      This Court has personal jurisdiction over the parties to this action and subject matter jurisdiction over the controversy alleged in this Complaint under 28 U.S.C. §1331 based on the federal questions presented, and under 28 U.S.C. §1367 based on the Court's supplemental jurisdiction over Plaintiff's claims arising under the laws of the Commonwealth of Kentucky as part of the same case and controversy as her claims arising under federal law.

10.      The United States District Court for the Eastern District of Kentucky at Covington is the appropriate venue for this civil action under 28 U.S.C. §1391.

**FACTS**

11.    Plaintiff incorporates the allegations in the preceding paragraphs of this Complaint as if fully rewritten.

12.    The conclusive events relevant to this Complaint took place during this Incident involving 48 sworn officers of the City of Covington Police Department ("CPD"), and reinforcements from neighboring jurisdictions on a muggy July 17, 2025, evening, between 8:01 p.m. and 8:11 p.m., on the Bridge, as depicted in part in the three following Images:



No.1



No.2



No.3

**<u>Suzanne Bratt</u>**

13.     Plaintiff incorporates the allegations in the preceding paragraphs of this Complaint as if fully rewritten.

14.     Plaintiff Suzanne Bratt and CPD Officer Ross Woodward are depicted in Image No.2 above.  Suzanne is the person in the purple shirt and sandals being thrown to the decking by Officer Woodward, crouching above her, gloves on but without cuffs.

15.     By Woodward's account, when he arrived, "most people were attempting to get off of the roadway."

16.     For her part, Suzanne got out of the roadway by stepping onto a structural beam and trying to move along it toward the pedestrian walkway.

17.     At about 8:10 p.m., Woodward pointed his baton at Suzanne and ordered her to the walkway.

18.     Seconds earlier, a second police officer, Officer Fain, had urged her group of observers to get up on the beam and/or *stay* on the beam if they'd already reached it.  And that's what Suzanne did, because that's the instruction she was able to *hear* in the melee of officers around her with a full crowd-control arsenal at their disposal beyond bare hands, *i.e.*, batons, dogs, tasers, pepper bullets, and drawn firearms.  This manufactured chaos, coupled with how loud the Bridge already is on its own, disoriented Suzanne and those around her as anyone can imagine.

19.     At any rate, to reach the walkway, Suzanne had to climb through the Bridge's cable system — a bottom cable too high to step over easily and a second cable

6

too low to pass under easily, as Woodward candidly pointed out during Suzanne's criminal trial on February 4, 2026.

20.     Officer Woodward pointed his baton at her a second time and told her to "get on the walkway or go to jail."

21.     And Suzanne moved in the direction Woodward ordered.  As she did so, another person stepped into her path and laid into Officer Woodward in an obscenity-laden tirade.  At that moment, Suzanne's left arm was on the upper cable, and her right arm was reaching over, positioning to climb through to the walkway — to do exactly what Woodward had ordered.

22.     One second later, at 8:10:43 p.m., Woodward grabbed Ms. Bratt from behind, by her arms and upper body, without warning, and while she was defenseless.

23.     Suzanne works at the University of Cincinnati's Performing Arts Library, where she was promoted to interim head of the library in the summer of 2025, supervising staff and student assistants.

24.     On Sundays, Suzanne sings at Christ Church Cathedral in downtown Cincinnati, where she helps lead worship every week and rehearses every Thursday night.  Suzanne loves to bake and does so for her congregation's coffee hours.

25.     On July 17, 2025, Suzanne attended a vigil near the Bridge for a Cincinnati Children's Hospital chaplain as a show of support for him and a friend.

26.     Reserved.

27.     Suzanne's plan after the vigil was to go home and start baking six dozen cookies for a friend's wedding that Saturday.

7

28.     So, when the vigil's last speaker invited attendees to join a peaceful walk across the Bridge for a moment of silence, she went.

29.     She came home from that walk the next morning, however, with a grid-pattern bruise across her back matching the surface of the Bridge roadway, a handprint bruised into her shoulder, bruises down both arms, and injuries to her knee and elbow:





30. Suzanne was not drinking or using drugs at the time of the Incident. Nor was she intoxicated or otherwise under the influence of alcohol or drugs.

31. The day after the Incident, Suzanne's physician documented swelling and tenderness in her right arm, right elbow, bilateral wrists, thoracic back, and left knee (with ecchymosis), and pinpoint tenderness over her ribs, consistent with the force described in this Complaint.

32. Woodward said nothing about an arrest. He gave no order to stop. The last thing he told Suzanne to do, she was doing. He then dragged her off the beam and into the roadway and pushed her farther into it. She never saw it coming and had no ability or time to fall with any control over how she landed. Next, he threw her to the iron decking by executing a take-down maneuver that CPD officers are trained to do. Within three seconds after grabbing Suzanne, Officer Woodward was kneeling atop her but without handcuffs.

33. There's no genuine dispute that Suzanne suffered the physical injuries depicted in the Images above at Officer Woodward's hand, exactly as he testified.

34. Those photographs were taken the next day. Five months later, she was diagnosed with PTSD and other trauma responses directly from the Incident.

**The City and Officer Woodward**

35. Plaintiff incorporates the allegations in the preceding paragraphs of this Complaint as if fully rewritten.

9

36.     The City of Covington is the largest municipality in Kenton County and Northern Kentucky, and one of two county seats.  It is the fifth-largest municipality in the Commonwealth.

37.     As of the filing of this Complaint, the City is governed by Mayor Ronald L. Washington and four Commissioners and was so governed on the evening of July 17, 2025.

38.     The City maintains, funds, and operates eight municipal departments, of which the Covington Police Department ("CPD") is the largest, with over 114 sworn officers.

39.     CPD is currently under the leadership of Chief Col. Justin Wietholther, a 20-year veteran of the department.  Before ascending to his current office, Chief Wietholter served as CPD's Assistant Chief of Operations.  In this executive role, he oversaw the Patrol, Criminal Investigations, and Strategic Services bureaus, as well as the CPD SWAT team.

40.     At the time of the Incident, however, CPD was helmed by former Chief Brian Valenti, who retired after 30 years on August 1, 2025.

41.     CPD's official policies and procedures lie in its General Orders, Standard Operating Procedures, and various manuals for everyday operations.

42.     Officer Woodward has been a CPD officer since 2020.  In addition to being a patrol officer, he's served at times as a field training officer ("FTO"), bicycle officer, and member of the SWAT team.

10

43.     When Officer Fain responded to the Bridge, he issued dispersal orders over his vehicle's PA system.  Fain quickly realized that two things were standing in the way of his effectively communicating a lawful order: (a) people simply couldn't hear him despite the PA because it's a loud bridge; and (b) at that part of the Bridge, it's very difficult for an adult to slip through the iron cables between the ledge and the walkway without making it to a V-shaped crossing of support cables.  A bottleneck resulted.

44.     Eventually, Officer Fain stopped using his PA system and began "going individually to people, telling them to get on the sidewalk."  To others who were already on the ledge, however, he instructed them to *stay* on the ledge or to "get up" on the ledge if they could, which is what he was trying to accomplish.  His purpose was just to get people out of the roadway.  To the extent people were off the roadway, they were compliant with his dispersal orders.

45.     Suzanne made it to the beam and tried to wait out the bottleneck in front of her by letting others go in front of her.  As Officer Woodward testified, *in addition* to the Bridge's physical structure, there is a gap of about 12 inches between the ledge and the sidewalk on the other side of the structural elements.  That gap leads straight down to the Ohio River about 74 feet below.  It's unlikely that an adult would fall all the way through.  As Officer Woodward observed, however, the gap is dangerous, and a person could seriously injure themselves if they slipped into it.

46.     While Suzanne was doing what Officer Fain told just her to do, Officer Woodward approached her with his baton after taking another small person to the

11

deck without warning, at a point at which the roadway was "basically clear" according to him, because most of the participants had already moved or were moving to comply, like Suzanne was.

47.    Officer Woodward agrees that navigating through the bridge's superstructure was "difficult," in that the cables were positioned such that they were "just high enough to make it difficult to get over" and "too low to get under very easily," and agrees that "unless you're doing some gymnast-level acrobat work, there's really no good way to get through that[.]"

### Afterwards

48.    Plaintiff incorporates the allegations in the preceding paragraphs of this Complaint as if fully rewritten.

49.    Since the July 17, 2025, Incident, Suzanne has also suffered from diagnosed trauma responses as a direct result of the gratuitous violence visited upon her by Officer Woodward, *e.g.*, emotional distress, hypervigilance, an exaggerated startle response, sleep disturbance, nightmares, difficulty relaxing, generalized anxiety, anxiety and panic in crowds, stress, PTSD, intrusive thoughts, problems focusing, and loss of enjoyment, panic symptoms, and occupational impairment, with a quantified PROMIS Global Mental Health score of 28.4 ("Poor").

50.    On February 4, 2026, Suzanne was convicted by a Kenton County District Court Jury of failing to disperse upon a lawful order under KRS §525.160 and sentenced to pay a $250.00 fine in Case No. 25-M-1210.

## CAUSES OF ACTION

### Count I
### 42 U.S.C. §1983: Unlawful and Excessive Force,
### Violation of the Fourth Amendment

51.    Plaintiff incorporates and realleges the allegations in the preceding paragraphs of this Complaint as if fully rewritten.

52.    Officer Woodward is a state actor subject to suit under 42 U.S.C. § 1983, which provides in relevant part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

53.    At all times relevant to this Complaint, Officer Woodward was a "person" within the meaning of Section 1983, and he acted under color of state law as a sworn police officer employed by the City.

54.    The Fourth Amendment protects against the use of excessive, or unreasonable force in the course of an arrest or investigatory stop.

55.    When Officer Woodward took Suzanne to the ground, he had no handcuffs with him.  Officer Woodward did not stay with Suzanne after taking her down.  He left to attend to another matter elsewhere on the Bridge, and he wrote up her citation later, sitting alone in his cruiser.

56.    Other officers, not Woodward, cuffed and transported Suzanne to jail.

13

57. Woodward laid hands on no one else on that part of the Bridge that night. Bystanders standing near Suzanne, who had not even reached the beam — who were, by any measure, less compliant with the dispersal instructions than she was — were left alone. Suzanne was the only person Officer Woodward took to the ground.

58. Suzanne spent that night in jail.

59. The physical bruises resolved within weeks. Five months later, in December 2025, Suzanne was diagnosed with PTSD, presenting as hypervigilance, an involuntary startle response, intrusive thoughts, sleep disturbance, and impaired occupational functioning. She remains in treatment.

60. Under the totality of the circumstances, and even accounting for the split-second decisions police officers must make in tense, uncertain, and rapidly evolving situations, Officer Woodward's use of force against Suzanne was objectively unreasonable because: (a) the crime for which she was ultimately convicted was a minor, non-violent Class B misdemeanor; (b) she posed no threat whatsoever to the safety of Officer Woodward, other officers, or bystanders; (c) she was not actively or passively resistant before, during, or after her arrest; and (d) she posed no risk of evading arrest by flight.

61. Suzanne was not armed.

62. Nor was she physically, verbally, or otherwise threatening or aggressive at any point. No exigency justified the force Officer Woodward used against her.

63.     Suzanne's conviction for failing to disperse concerned her initial presence on the roadway, before Officer Woodward gave her an individualized order. It does not concern, and it is not inconsistent with, what happened next: In the moment Officer Woodward used force against her, Suzanne was actively complying with his most recent, specific instruction to reach the walkway.  He gave that order. He watched her attempt to follow it.  At no point was she non-compliant with that order to the extent she was physically capable of executing it.

64.     Even viewed through Officer Woodward's subjective eyes, Suzanne "didn't really do anything."  He knew she posed no threat.  He knew she was not actively resistant and could not evade arrest by flight.  From his perspective, she was trying to comply.  And he knew he had no handcuffs.

65.     Knowing all of that, Officer Woodward took Suzanne to the ground from behind, without warning, "because she was not moving off of the structure of the bridge itself, and she didn't make any effort."

66.     By doing so, Officer Woodward deprived Suzanne of rights secured by the United States Constitution and the laws of the United States, and he knew or should have known that his conduct violated her clearly established Fourth Amendment right to be free from excessive force.

67.     As a direct and proximate result of Officer Woodward's use of excessive force against her in violation of her clearly established Fourth Amendment rights, Suzanne has suffered compensable constitutional harm, injuries, and damages in excess of the jurisdictional threshold of this Court, including, without limitation,

damages for emotional distress and psychological injury, physical injuries and pain, PTSD, out-of-pocket medical expenses, loss of enjoyment of life, and such other monetary damages as the trier of fact may determine.

## Count II
### 42 .S.C. §1983: Monell Liability

68.     Plaintiff incorporates and realleges the preceding paragraphs of this Complaint as if fully rewritten.

70.     Not only did Officer Woodward know all of the above, but the City thoroughly investigated this Incident: CPD leadership, the City's counsel, and other City officials reviewed the body-worn camera footage and interviewed everyone with relevant knowledge.  Officer Woodward was not disciplined for his conduct.  The City did not merely tolerate Officer Woodward's actions — it agreed with, adopted, and endorsed them as a matter of official policy and procedure.

71.     Officer Woodward's use of force against Suzanne need not be part of a broader pattern to establish the City's liability under Monell.  Where, as here, an official with final policymaking authority over CPD discipline reviews an officer's conduct and declines to discipline him, that ratification is itself an act of municipal policy for which the City is liable.

72.     The constitutional injury Suzanne suffered stems directly from that ratification. Acting through its Chief of Police and other officials vested with final authority over the discipline of CPD officers, the City adopted Officer Woodward's use of force as its own official act when it reviewed his conduct and chose not to discipline him.

16

73.     The City is therefore liable in its own right under Section 1983 and Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), because the City's ratification of Officer Woodward's conduct — through officials with final decision-making authority acting in their official capacities — was itself the moving force behind the deprivation of Suzanne's Fourth Amendment rights.

74.     Independent of that ratification, the City is also liable for the acts and omissions of its officials with final decision-making authority who, as a matter of policy or custom, tolerated, endorsed, and acquiesced in the violation of Suzanne's Fourth Amendment rights through the City's negligent or deliberately indifferent:

    a.  Hiring and retaining Officer Woodward;

    b.  Failing to properly train Officer Woodward;

    c.  Failing to properly supervise Officer Woodward; and

    d.  Failing to discipline and correct the unlawful acts and omissions of Officer Woodward described in this Complaint.

75.     But for the City's ratification, adoption, and endorsement of Officer Woodward's unlawful and unconstitutional conduct as a matter of policy, procedure, and custom — the driving and motivating force behind it — Suzanne would not have been subjected to the deprivation of her clearly established rights under the Fourth Amendment, as secured by federal law.

76.     As a direct and proximate result of the City's independent acts and omissions alleged in this Complaint, Suzanne has suffered compensable constitutional harm, injuries, and damages in excess of the jurisdictional threshold

of this Court, including, without limitation, damages for emotional distress and psychological injury, physical injuries and pain, PTSD, out-of-pocket medical expenses, loss of enjoyment of life, and such other monetary damages as the trier of fact may determine.

## Count III
## Intentional Infliction of Emotional Distress

77.    Plaintiff incorporates and realleges the preceding paragraphs of this Complaint as if fully rewritten.

78.    As described in this Complaint, Officer Woodward engaged in intentional and/or reckless conduct toward Suzanne.  This conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality by exercising gratuitous violence upon Suzanne while acting under the official powers of his office and under color of state law.

79.    As a direct and proximate result, the conduct of Officer Woodward described in this Complaint caused (and causes) Suzanne severe and serious emotional distress, humiliation, mental anguish and suffering, psychological injuries, and damages in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

## Count IV
## Negligent Infliction of Emotional Distress

80.    Plaintiff incorporates and realleges the preceding paragraphs of this Complaint as if fully rewritten.

81.    Alternatively, as alleged in this Complaint, Officer Woodward was negligent in his acts and omissions.

18

82.    As alleged throughout this Complaint, Officer Woodward made unwanted physical contact and impact upon Suzanne, which has caused her severe emotional distress and psychological injuries.

83.    As a direct and proximate result of the negligent infliction of emotional distress inflicted upon Suzanne by Officer Woodward, she has suffered compensable injury and damages in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Suzanne Bratt prays for judgment against Defendant, Officer Ross Woodward, individually and in his capacity as a police officer and public official acting under color of State law, and the City of Covington, Kentucky, in its own right, as follows:

A.    Compensatory damages and out-of-pocket medical expenses;

B.    Equitable relief;

C.    Damages for emotional distress and psychological injuries;

D.    Statutory damages;

E.    Pre- and post-judgment interest on damages is allowable;

F.    Injunctive relief;

G.    An award of her reasonable attorney's fees and costs;

H.    An award of punitive damages; and

I.    Such other relief the Court deems appropriate in excess of its jurisdictional threshold.

**DATED: July 17, 2026.**

Respectfully submitted,

*/s/Justin M. Whittaker*
Justin M. Whittaker, Esq. (92364)
WHITTAKER LAW, LLC
2055 Reading Road, Suite 260
Cincinnati, Ohio 45202
(513) 457-5545
(513) 436-0698 Fax
Justin@WhittakerLawFirm.com

**Counsel for**
**Plaintiff Suzanne Bratt**

## JURY DEMAND

Plaintiff reiterates her demand for a jury trial on all issues so triable.

Respectfully submitted,

*/s/Justin M. Whittaker*
Justin M. Whittaker, Esq. (92364)